## GORDON *vs.* TUCKER & ALS.

J. T. and other individuals, named only as such, gave bond to R. G. submitting to arbitrators " his claim for damages occasioned to his land by the erection and continuance of the dam across *Saco* river at Union falls." The arbitrators, re-citing that they had *viewed the premises*, awarded that J. T. " *and other propri-etors of the Union-falls-mills*," should pay to R. G. a certain sum, and costs. It was *held* that here were sufficient indications that the award was between the parties to the bond ;—that the award was of itself a bar to any farther claim for damages, and operated to secure to the obligors the right to flow the land in fu-ture, without farther payment of damages to the obligee; and that therefore it was mutual and final.

Submissions and awards, like other contracts, are to be expounded by the intent of the parties and arbitrators.

Arbitrators at common law have no authority to award costs, unless it is expressly given to them.

If an award is bad in part only, it may be good for the rest ; unless, by the nullity of a part, one of the parties cannot have the advantage intended as a considera-tion therefor.

If an award be good for the damages awarded, but bad as to the costs ; whether a replication would not be vitiated by assigning non payment of costs as part of the breach ;—*quære*.

Where the question of damages for flowing land has been submitted to arbitration, and the award performed ; whether a subsequent grantee of the land can pur-sue any remedy for damages accruing after his purchase ;—*quære*.

IN debt on an arbitration bond, it appeared, on *oyer* of the condi-tion, that the defendants, who were named as private individuals, mutually agreed with the plaintiff " to submit to the determination of *Moses Bradbury, Gibeon Elden* and *Jabez Bradbury*, the claim of the said *Reuben Gordon* for all damages which have been occa-sioned, or which may hereafter be occasioned to the land of said *Reuben Gordon*, by the erection and continuance of the dam across *Saco* river at *Union falls*, to the height the same is now erected ; the report of whom or the major part of whom to be final and con-clusive between the parties ;" and covenanted " well and truly to perform, fulfil and keep the award," &c.

Gordon *v.* Tucker & als.

The defendants pleaded, *first,* that the arbitrators " made no such award, report or determination of and upon the premises as was contemplated in the condition of said writing obligatory, and in conformity thereto." The plaintiff replied that they did make such award, setting it forth *in hæc verba* :—" We the subscribers, a committee appointed by *Reuben Gordon* of *Hollis,* on the one part, and *Jonathan Tucker* of *Saco, and other proprietors of the Union falls mills in said Hollis,* on the other part, having duly notified the parties therein concerned, met and viewed the premises agreeably to our appointment, and having heard their several pleas, proofs and allegations, and maturely considered the same, do award and determine, and this is our final award and determination, that *Reuben Gordon* recover of *Jonathan Tucker* of *Saco, and other proprietors of the Union falls mills,* the sum of one hundred and twenty five dollars damage, and costs of reference taxed at twenty-five dollars and fifty-seven cents." Which was signed by all the arbitrators. To which the defendants answered by a general demurrer.

The defendants pleaded, *secondly,* that the plaintiff " had not well and truly performed, fulfilled and kept the award" of the arbitrators, " in all things on his part to be performed, &c., as specified in the counterpart of the same writing obligatory," made on the same day. The plaintiff replied that he had so kept the award. The defendants rejoined that the plaintiff had not " made, executed and delivered to the said defendants a good and sufficient deed, conveying to them the right to flow the premises set forth in the counterpart of said writing obligatory, agreeably to the award" &c. And the plaintiff hereupon demurred in like manner.

*Goodwin,* for the defendants, contended that the award was bad. 1st. It is not made between the parties to the submission. The obligors in the bond have not described themselves as proprietors of the *Union falls mills,* nor as part owners either of the mills or of the dam ; nor have they stipulated in behalf of the proprietors ; neither does it appear by the bond that any of the obligors are owners of the mill ; and the award is made on a separate paper. Now parol proof is not admissible to connect the award with the bond, nor to rectify any mistake of this kind. *Montague v. Smith,* 13 *Mass.*

396 ; *Woodbury v. Northy*, 3 *Greenl.* 85. Neither does it appear by the award that these obligors were heard by the arbitrators ; nor is any thing awarded for them to perform. They are not bound by the award, not having bound themselves for the proprietors ; nor are the proprietors bound, they being strangers to the submission. *Eveleth v. Chase*, 17 *Mass.* 458 ; *Cutter v. Whittemore*, 10 *Mass.* 442 ; *Kyd on Awards*, 103—105 ; *Boston v. Brazier*, 11 *Mass.* 447.

2. The award is not made of and upon the premises. The arbitrators have not reported what sum they allowed for damages up to the time of submission ; nor what for future damages ; nor for what consideration the sum named in their award was allowed. *Bacon v. Dubarry*, 1 *Ld. Raym.* 246 ; 12 *Mod.* 129 ; *Kyd* 139.

3. It is not mutual. Nothing is awarded to be done by *Gordon* ; nor does it appear for what cause the money is to be paid ; nor what rights or privileges are to accrue to the defendants by the payment ; neither could this submission and award, taken together, be successfully pleaded in bar of any future action or complaint for flowing the plaintiff's land, brought by himself ; much less would it bar his grantee, who could learn nothing from the award. *Peters v. Pierce*, 8 *Mass.* 398 ; *Stain v. Wilde* Cro. Jac. 352 ; *Ormelade v. Coke*, ib. 354 ; *Lumley v. Hutton*, ib. 447.

4. It is not final. It creates no lien or incumbrance on the plaintiff's land ; nor does it give the defendants any rights beyond what were already secured to them by the statute regulating mills. The bond is not an instrument of defeazance, but a penal bond. It does not provide that the defendants shall use the land of the plaintiff, on any conditions whatever ; and the award leaves the whole subject open to the same litigation as if no bond had been made. *Erskine v. Townsend*, 2 *Mass.* 493 ; *Harrison v. Phillips Academy*, 12 *Mass.* 456 ; *Jones v. Boston Mill Corporation*, 4 *Pick.* 507 ; *Palmer's case*, 12 *Mod.* 234 ; *Veale v. Warner*, 3 *Saund.* 293, note 1.

5. It is at least void so far as costs are concerned ; the arbitrators having no power to award these, unless specially given ; which was not the case here. *Cutter v. Whittemore*, 10 *Mass.* 442 ; *Bussfield v. Bussfield*, Cro. Jac. 577 ; *Abrahat v. Bragdon*,

32

10 *Mod.* 201 ; *Pinkney v. Hale,* 1 *Lev.* 3 ; *Dolbier v. Wing,* 3 *Greenl.* 421.

6. The replication is bad, because it assigns as a breach the non payment of damages *and costs.* Being bad in part, it is wholly defective and insufficient. And this fault may be shown either upon general demurrer, or in arrest of judgment. *Heard v. Baskerville,* Hob. 232 ; 5 *Com. Dig. Pleader F.* 14, *C.* 47 ; *Cooke v. Whorwood,* 2 *Saund.* 337 ; *Pope v. Brett ib.* 293, note 1 ; *Hayman v. Gerrard,* 1 *Saund.* 102 note 1 ; *Fox v. Smith,* 2 *Wils.* 267 ; *Addison v. Gray,* 2 *Wils.* 293 ; *Roberts v. Marriot,* 1 *Mod.* 289 ; *Hill v. Thorn* 2 *Mod.* 309 ; *Thirsby v. Helbot,* 3 *Mod.* 272 ; *Meredith v. Alleyn,* 1 *Salk.* 138 ; *Barrett v. Fletcher, Cro. Jac.* 220 ; 1 *Nelson's Abr. tit. Arbitr. M. pl.* 1, 2, 3, 4 ; *Kyd* 200 ; 1 *Chitty's Pl.* 643 ; *Earl of Manchester v. Vale,* 1 *Saund.* 28 ; *Perkins v. Burbank,* 2 *Mass.* 81 ; *Webber v. Tivill,* 2 *Saund.* 127.

*J. & E. Shepley,* for the plaintiff, to show that the objection of want of parties to the award was not open upon these pleadings, cited 1 *Chitty's Pl.* 476 ; 2 *Saund.* 184 ; 1 *Saund.* 63. To the goodness of the award they cited *Gaylord v. Gaylord,* 4 *Day* 422 ; *Butland v. Conway,* 16 *Mass.* 396 ; *Peters v. Pierce,* 8 *Mass.* 398 ; *Forsyth v. Shaw,* 10 *Mass.* 253 ; *Jones v. The Boston Mill Corporation* 6 *Pick.* 148 ; *Strong v. Ferguson,* 14 *Johns.* 161. And to the faultiness of the defendant's second plea they cited 2 *Chitty's Pl.* 477 ; *Beane v. Farnham,* 6 *Pick.* 272.

WESTON J. delivered the opinion of the Court at the adjournment in *August* of the ensuing *May* term in *Cumberland.*

From the award set forth in the replication, it sufficiently appears that it was made between the parties to the bond of arbitration now in suit. There are indications to this effect, which are not to be mistaken. The plaintiff is therein named as one of the parties, and *Jonathan Tucker,* who first executed the bond set forth on *oyer,* is also named as one of the other parties. The arbitrators are the same, and their signatures are arranged to the award, as they are in the submission. They award damages to *Reuben Gordon ;* and his

claim for damages was the subject matter submitted to their determination, by the agreement of the parties before us. So many marks of identity might have been satisfactory, even if there had been recited in the award circumstances of a more prominent character, inconsistent therewith. Effect is given to deeds, although the premises conveyed cannot be located in accordance with every particular in the description. *Worthington v. Hylyer*, 4 *Mass.* 196. But the description of the parties in the award may, for any thing which there appears, be exactly coincident with the parties named in the bond. *Jonathan Tucker* and others, particularly named in the bond, are the parties of whom damages are demanded. In the award, the parties against whom damages are awarded, are described as *Jonathan Tucker* and other proprietors of the *Union*-falls mills. Now it is no where averred in the pleadings, nor does it otherwise appear, that the defendants are not the proprietors of those mills. Whatever is deducible from the case before us, would rather establish, than disprove that fact. The arbitrators were evidently of that opinion. In the condition of the bond, the damage is stated to have been occasioned " by the erection and continuance of the dam across *Saco* river at *Union* falls." It would certainly not be unreasonable to presume that the dam at *Union* falls was erected and continued by the proprietors of *Union* falls mills. It not appearing that there was any other submission, to which the award could apply ; we are satisfied that it must be regarded as having been made between the parties to the bond of arbitration now in suit.

It is objected that the award is not made, " of and upon the premises." It is urged that the award is to be taken as an instrument by itself; that it does not refer to the bond, and that it cannot be connected therewith by parol testimony. How far parol testimony, for this purpose, might be introduced in a case like this, it is not necessary to determine, as we entertain no doubt that, by fair implication, the award does in its terms refer to the bond, and follows the submission therein made. It is impossible to read them both without perceiving, to every reasonable intent, their connection and identity. This point being established, the award is to receive the same construction, as if made upon the bond. The arbitrators say that, after

having duly notified the parties, they viewed the premises agreeably to their appointment. What were the premises? The dam, and the land of the plaintiff, alleged to have been injured thereby. After having examined the premises, they proceed to state that, having heard the parties, their several pleas, proofs and allegations, and maturely considered the same, they award a certain sum in damages to the plaintiff. - It appears that the subject submitted was distinctly considered, and adjudicated upon by the arbitrators. This objection therefore cannot prevail. Nor is there any uncertainty in the award when connected with the bond.

The award, it is insisted, is void, for want of mutuality. So far as the damages awarded apply to the injury sustained, prior to the date of the bond, the defendants have already enjoyed an equivalent; and so far as they are prospective, payment would doubtless be a protection against any future claim. If the plaintiff should prefer a complaint against the defendants for flowing, under the statute, these proceedings, being pleaded and verified, would constitute a sufficient bar to such complaint. Here then is mutuality; and if the defendants are not so perfectly protected, as they would have been by a deed executed by the plaintiff acknowledged and recorded, assuring to the defendants a right to flow the plaintiff's land; it may be said that the defendants did not, in the condition of the bond, stipulate for such an assurance; nor is it made the duty of the arbitrators to award it. As the award stands, they are protected from all claim on the part of the plaintiff, and it was his damage which the arbitrators were appointed to estimate; and this, when ascertained, the defendants have stipulated to pay. How far they might be held answerable to the grantee of the plaintiff, with or without notice, for damages arising from the flowing, subsequent to the assignment of the land flowed, or whether the grantee, having purchased land covered with water, by the consent and agreement of the grantor, could pursue any remedy against the defendants, by whose dam the flowing of such land was rightfully and lawfully occasioned, at the time of his purchase, we do not deem it necessary to determine. The case of *Jones v. the Boston Mill Corporation*, 6 *Pick.* 148, is an authority to show that the plaintiff would be precluded by the award, from demanding further

Gordon v. Tucker & als.

damage. And the court in that case go the length to determine, that an award of arbitrators may affect and determine the title to real estate, without the execution of releases. If so, the defendants would be protected against the assignee s or grantees of the plaintiff. But be that as it may, we are of opinion that protection against the plaintiff, is mutually enough to sustain the award.

The award adjudicates upon, and puts at rest the controversy, between these parties. It liquidates the damage sustained by the injury complained of; and this absolutely, without any condition or contingency. Upon payment of the sum awarded, all claim on the part of the plaintiff is satisfied and extinguished. The award is therefore final, upon the subject matter submitted.

The law, as it was formerly understood on the subject of awards, was exceedingly narrow and illiberal. They were considered as instruments, not within the range of the sound rules of construction and interpretation, which were applied to deeds and wills; and they were often defeated upon objections, which could not now be seriously urged. But courts, at the present day, look at the intent of the parties and of the arbitrators, as it may be collected from the express terms and just implication of the instruments, in which the submission and award are set forth; and objections which are merely formal, and which do not go to the merits, are regarded with little favor.

One objection is urged by the defendants, which, upon consideration, we are satisfied is justly taken. No authority is given by the submission to the arbitrators to award costs. No power to this effect is vested in them by the common law, as incident to their appointment and office; nor is it given by any statute. The parties are at liberty, by their submission, to give this power to the arbitrators; and where they do so, they are bound by their determination upon this point. It may be often equitable that the adjudication should be obtained, at the joint expense of the parties. The party upon whom a debt or duty has devolved, may be willing and anxious to discharge it, but there may be an uncertainty as to the extent of his liability. There has been no direct decision upon this point in Massachusetts, or in this State. In *Peters v. Pierce*, 9 *Mass.* 398, *Sedgwick J.* expresses a strong opinion, that arbitrators have

no authority to award costs ; unless it is expressly given in the submission. In *Dolbier v. Wing*, 3 · *Greenl.* 421, it is merely stated by the Chief Justice, that the law seems unsettled upon this point ; but no opinion whatever is given.

The case of *Strong v. Ferguson* 14 *Johns.* 161, has been cited. It was an action of debt on an arbitration bond, where a power to award costs was not included in the submission. The arbitrators had awarded, in favor of the prevailing party, the costs of arbitration. To their award upon this point, the defendant objected. But the court allowed these costs, upon the authority of *Kyd* on awards, and of *Doe ex dem. Wood v. Roe,* 2 *D. & E.* 644. In the latter case, which was a submission to arbitration under a rule of court, an objection was taken to the award of costs, but it was not sustained ; the court stating that the power of awarding costs was necessarily consequent on the authority, conferred on the arbitrator, of determining the cause. And this is a general principle, which *Kyd* in his text deduces from this case, as applicable to all cases of arbitration. The case itself was a reference under a rule at *nisi prius* ; and it is not distinctly stated whether the costs objected to were the costs of arbitration, or of the action. In the appendix, however, to *Kyd's* second edition, he states that after the greater part of that edition had gone to press, he had seen a manuscript report of the case of *Candler v. Fuller* in the common pleas, in the time of Lord *C. J. Willes,* in which it was decided that in the case of a submission by bond, the arbitrators cannot award the costs of reference, unless power be expressly given to them for that purpose ; and he admits, if this is law, his doctrine in his text must be considered erroneous. He further states that he has found no case, where costs have been allowed, where the submission was by bond.

*Bradley v. Tunstow*, 1 *Bos. & Pul.* 34, was a reference at *nisi prius ;* but the court refused to allow the costs of reference, *Eyre,* Chief Justice, saying that the reference having been made for the convenience of both parties, both ought to sustain the expense ; unless it was otherwise provided in the rule. The prothonotary in that case, being directed to make inquiry as to the practice in the King's bench, reported that he had been informed by the master,

that although the question had not been directly raised to his knowledge, it was generally understood that an arbitrator had no power to give the costs of the award ; unless under a provision inserted in the order of *nisi prius*.

If the award is bad as it respects the costs, the counsel for the defendants insists that it is bad for the whole. It is laid down that if by the nullity of any part, one of the parties cannot have the advantage intended as a consideration therefor, the award is bad in the whole. *Pope v. Brett,* 2 *Saund.* 293. *note* 1. But if an award is bad as to part only of what is ordered to be done by one of the parties, but good as to the rest, it is not competent for him who is ordered to perform it to object to the whole. In *Addison v. Gray,* 2 *Wils.* 293, there was, upon a submission under bonds of arbitration, awarded to the plaintiff a sum of money, and also certain costs. The award was holden bad for the costs, but good for the residue ; and the plaintiff had judgment. There is then a good breach assigned in the replication, in the non payment of the damages awarded ; and the plaintiff's right of action is unaffected by the award of costs, which is unauthorized. It would seem therefore that upon the whole record, the plaintiff is entitled to judgment. But doubts being entertained whether, according to some of the older authorities, the replication is not vitiated by the assignment of the non-payment of costs as part of the breach, the plaintiff has leave to amend his replication, by striking out this part of the breach. This being done, the replication to the first, and also to the second, plea in bar are to be adjudged good.