EDWARD MILLER, Executor, &c., of JOHN G. WARREN, deceased, Respondent, *v.* THE PRESIDENT, &c., OF JUNCTION CANAL COMPANY, Appellant.

By a statute authorizing the defendant (a corporation) to take land, and to erect dams abutting on land of others, it was provided that where there was any disagreement between the company and the owner, as to the amount to be paid therefor, "*it should be lawful* for the parties to appoint three persons impartially to estimate and determine the price to be paid for the same;" * * * "but if a majority of the persons appointed should not, within thirty days after receiving notice of their appointment, file a report of their estimate, either party may apply to the court for a venire to the sheriff to summon a jury.

A dam having been erected by the defendants, abutting on the plaintiff's land, and a small strip of the land being taken by them, and the parties not being able to agree upon the compensation, entered into an agreement in writing, appointing three persons to determine the amount to be paid the plaintiff. After several hearings before these persons, attended by the counsel and witnesses of both parties, the defendant served upon them, and upon the plaintiff, a written notice, revoking the powers of the referees. The referees failing and refusing to proceed, in consequence of such revocation, their fees were paid by the plaintiff. In an action brought by him against the defendants, for the amount so paid, and, also, witness and counsel fees paid by him, on said hearings,—*Held* (WOODRUFF, MASON and LOTT, JJ., dissenting), that he could recover them.

Whether or not the defendants had any power to revoke such appointment or submission, it was too late for them to deny its existence in this action, after they had not only previously asserted it, but by such assertion effected their object, and rendered the plaintiff's disbursements useless.

(Cause argued June 16th, 1869, and decided September 23d, 1869.)

Appeal from judgment for the plaintiff upon the decision of a judge without jury, affirmed in General Term of the Supreme Court in the sixth district.

The action is brought to recover the expenses incurred by John G. Warren (the testator), in certain proceedings had pursuant to the provisions of the charter of the defendant, for the determination of the price to be paid to him for certain lands, required for the use of the defendants, for the construction, maintenance, &c., of their canal and the works connected therewith.

The ground upon which the recovery was had is, that those proceedings constituted an arbitration; that after expenses had been incurred, and witnesses examined, the defendants revoked the powers of the persons appointed to estimate and determine such price, in violation of their alleged agreement.

The facts are fully stated in the dissenting opinion of Woodruff, J.

*George F. Danforth,* for the appellant.

*Daniel W. Gillett* (*Samuel Hand* with him), for the respondent.

Daniels, J.  By the agreement which was made, selecting the three persons named in it to assess and determine the compensation to be paid by the defendant to the testator, it was clearly implied that the dispute existing between the parties on that subject, should be submitted to them for their decision; and even though no power was reserved in it, and created by the statute, for its revocation, it was too late for the defendant to deny its existence, after it had not only asserted the existence of that power, but, in addition to that, had accomplished the object for which that assertion had been

made. By the notice, which the defendant gave to the persons who were to assess the compensation, and to the testator, they were prohibited from proceeding with their examination and assessment, and acquiesced in that prohibition. The notice had the exact effect that the defendant designed it should have, which was to prevent the assessment from being made. And after securing that result by means of it, justice requires that it should not now be permitted to avail itself of the objection, that it did not have lawful authority for doing what it actually accomplished. If the act was unlawful, because it was unauthorized, it was none the less the cause of the damages sustained by the testator. It was clearly unwarranted by the legal tenor of the agreement made; and as the defendant has enjoyed its expected advantages, it should bear the burden of the expenses unjustly imposed by means of it upon the testator. Good morals as well as the law, which prohibits every person from taking advantage of his own wrong, concur in maintaining this result.

The recovery was for the expenses necessarily incurred by the testator, in preparing for the hearing of the matter in controversy between himself and the defendant. These expenses constituted a legal demand against the defendant, because they were rendered unavailable to the testator, by the unlawful act performed by it, as well as by means of the breach of the agreement it had entered into ; and upon the faith of the performance of which they were legitimately incurred.

The judgment should be affirmed.

WOODRUFF, J. (dissenting.) The act incorporating the defendants (Laws of 1846, chap. 194, § 222), after describing the canal which they are authorized to construct, and authorizing them to purchase and hold lands for the purpose, provides in sections 9 and 10, for the compensation to be made to individuals whose lands may be taken for this public use, or injured by the construction of the canal, whenever the parties cannot agree upon the amount to be paid. Thus : " It shall be lawful for the parties to appoint three persons impartially to estimate

and determine the price to be paid for the same; but if the parties cannot agree upon such persons, or if either party shall refuse or neglect to join in such appointment within twenty days after requisition for that purpose upon him or them made; and if the owner  *  *  shall be feme covert under age, *non compos mentis* or out of the State, or if a majority of the persons appointed shall not within thirty days after receiving notice of their appointment, file a report of their estimate in the office of the clerk of the county  *  *  then, and in either of these cases, either party may apply to the Court of Common Pleas of the county  *  * and the said court shall award a venire to the sheriff, requiring him to summon a jury," &c.   The jury are thereupon to ascertain and report to said court, the price to be paid by said company for said real estate, &c.   On confirmation of the report, and an award of a reasonable sum to the owner for costs, payment, or tender of the amount so reported and awarded, entitles the company to the lands, or to proceed with the construction injurious thereto.

The defendants requiring certain real estate belonging to the plaintiff's testator, and the latter claiming for further injury by their dam, three persons were appointed by a mutual agreement, in writing, dated June 23d, 1864, which recited, that the defendants could not obtain the real estate by voluntary agreement with John G. Warren, the owner, by reason of a disagreement between them, respecting the amount to be paid therefor; and that the defendants had erected a dam across the Chemung river, abutting on his lands, which he claimed was an injury, &c. ; and that they could not agree as to the compensation to be paid for such injury. The agreement then provided: "Now therefore, the said president, directors, and company of the Junction Canal Company, and the said John G. Warren, *pursuant to* sections 9 and 10 *of the act to incorporate the Junction Canal Company*, passed May 11, 1846, do hereby appoint Mordecai Rickey, Orrin Eddy, and John Haggerty, impartially to estimate and determine the price to be paid by said company

to said Warren for said real estate; and impartially to assess and determine the compensation to be paid by said company to said Warren, for the injury caused to said Warren by means of said dam. The said persons having all the powers subject to all the duties in the premises, as in and by said act conferred and enjoined." In witness whereof, &c., &c. Sealed by the parties.

The persons thus appointed, met on the 7th and 15th of July, and 3d of August, and proceeded in the hearing of the parties, and the examination of witnesses, with a view to making the estimate and determination provided for in the statute.

But on the day last named, the defendants served upon the said Warren, and, also, upon the said Rickey, Eddy and Haggerty, notices under the seal of the company, as follows:

"To MORDECAI RICKEY, ORRIN EDDY and JOHN HAGGERTY:

"GENTS.—Please take notice that the president, directors and company of the Junction Canal Company, hereby revoke your powers under the submission made to you by said company and John G. Warren, dated June 23d, 1854.

"In witness whereof, &c., dated July 15th, 1854."

The notice to Warren was to the like effect.

After the service of such notice, the said Rickey, Eddy and Haggerty refused to make any estimate or determination, or any report thereon.

The said Warren then paid them thirty-nine dollars for their fees. He had expended for witnesses' fees, four dollars and fifty-six cents. For these and the counsel fees for services in the matter, and interest thereon, he claimed to recover, and has recovered judgment for $173.94, with costs.

There is no dispute about the facts; and the sole inquiry is, whether the defendants are liable in damages to the plaintiff, by reason of the said notice of revocation.

Such liability is claimed on two grounds: 1st. That the appointment of Rickey, Eddy and Haggerty was a submission to arbitration and, though revocable, the defendants were liable to an action for the damages sustained in consequence

of the revocation, as a breach of the agreement, implied in the submission, to stand to and abide by the award.

And 2d. That the instrument of appointment, whether it was or was not technically a submission to arbitration, bound the defendants to abide by the determination of the persons appointed, and the notice of revocation was a refusal and a breach of the agreement.

I am of opinion that the instrument signed by the parties, was in no just sense a submission to arbitration, nor an agreement to anything, except to the appointment which the statute provided for; and that the consequences of the appointment are such as grow out of the provisions of the statute, and no other.

If I am correct in this, it is unnecessary to inquire whether, on a mere submission to arbitration, unaccompanied by either a collateral obligation or bond or terms in the submission itself, binding the parties to stand to the submission or abide by the award, a party will be liable in damages if he revoke; as to which our attention is called to Nymor's case (8 Co., 82); *Warburton* v. *Stow* (4 B. & Cres., 103); *Brown* v. *Tanner* (1 Carr. & P., 651); *Marsh* v. *Bulteel* (5 Barn. & Ald., 507); *Hawley* v. *Dodge* (7 Verm., 237); *Rowley* v. *Young* (3 Day, 118.) Or whether the rule of damages in such case be the expenses for which allowance was here made. (Ib. and Russell on Arb., 150; *Skee* v. *Coxon*, 10 Barn. & Cres., 484; see Kyd on Awards, 1st Am. ed., pp. 31, 32.)

The object of the statute was to provide for the taking of lands for the public use, on making just compensation. There was no occasion for a statute authority to the parties to agree upon the amount of compensation, but it was necessary to provide some mode in which the defendants could obtain the necessary lands and construct their canal, although unable to agree with owners as to the amount of such compensation.

Under the constitution (art. 1, § 7), this could be done by providing for the appointment of not less than three commis-sioners, to determine the amount, or for the award of a jury to make the assessment.

·The statute, therefore, in this case, left it to the option of the parties to appoint three persons satisfactory to themselves, or to apply for a venire directing the sheriff to summon a jury for the purpose of determining the amount.

It was expressly placed in the power of either party, to compel the adoption of one or the other of those modes of ascertaining the sum to be paid; neither could be compelled to agree to a determination by any three persons, but either could compel the other to abide by one or the other mode of determining the amount.

The agreement, therefore, which the parties made in this case, was a mere appointment of the persons who, instead of a jury, should make the estimate and determination, a selection between the two tribunals. No agreement to stand thereto, or to abide by the selection of the persons, or by the determination which they should make, was necessary or was in fact made. The consequences of the selection, and the effect of the determination by the persons selected, were pointed out by the statute or result from the statute; and not from any agreement expressed in the instrument of appointment, or implied therefrom.

Whether the estimate was made by the persons selected or by the jury, the defendants could not acquire the lands, or the right to the injurious erection without payment or tender of the amount of such estimate and any costs awarded by the court, and on such payment or tender their title was complete.

Whether after such estimate and determination had been made, the defendants had the power to decline taking the land, or would be liable to pay in any case, whether they took the land or made their construction elsewhere, leaving the lands to the owner untouched, it is not necessary to say. The act of incorporation is not very full or complete in its provisions on that subject. It is clear that if the defendants would have been at liberty to locate their canal or dam elsewhere, and decline taking the plaintiff's land or to pay therefor, then such determination by the persons appointed would bear no analogy to an award of arbitrators.

Waiving, however, that inquiry, I think the instrument

executed by the parties was a determination of their option' as to the tribunal by whom the estimate of the price or compensation should be made, and was, therefore, final and irrevocable. The acts or neglect of the appointees to make their report within thirty days might defeat it, but no mere act of one of the parties could do so.

When the persons were appointed, their powers and duties and the legal effect of their performance rested on the statute and not on any agreement. They were called into office by the designation of the parties, and that is all; when appointed, their office, powers, and duties were complete, and neither party could control them or displace them.

The counsel for the plaintiff herein, I think, very properly styles the agreement their commission. Whether they should be commissioned or not depended on the consent of the parties, but being commissioned, their power and duty to act and the effect of their action depended on the statute.

In this sense they were a statutory tribunal, deriving their commission from the parties, but their powers and duties from the statute.

Certain actions may be referred, and can only be referred by consent of the parties. On such a reference, it is in a certain sense true, that the referees derive their capacity to hear and determine the action from the consent of the parties, but it could never be claimed that their powers could for that reason be revoked by either party.

It follows from this view of the nature and effect of the appointment of Rickey, Eddy, and Haggerty, that the notice served on them, and on the plaintiff's testator, was wholly inoperative. The powers attempted to be revoked were, in their nature, irrevocable. Neither they nor the testator were bound to regard it at all. If the persons appointed saw fit to do so, they suffered the thirty days to elapse without making their report, and created a case not before existing, in which the testator could apply for a jury; and if they so neglected, without the assent of the testator, they may themselves have been liable to him in damages, for not performing

the duties of a commission which they had accepted and begun to execute. On the other hand, if he chose to assent to this attempt at revocation, he must be deemed to have voluntarily so assented, and can have no action therefor.

These views of the nature of this instrument of appointment are equally fatal to the idea, that it imported an agreement not to revoke. It imported just what the statute contemplated, and nothing more, viz.: A selection of the tribunal who should fix the price; and as such, it determined the right and control of the defendants over that subject, unless, and until the persons appointed failed to make their report within the time limited by the statute, when the further statute remedy might be invoked by either party.

It is quite true, that the conduct of the defendants in this matter appears reprehensible, and it seems to have practically operated to prevent a report; and the judgment herein, awarding indemnity to the plaintiffs for the expenses incurred, accords with a loose sense of what is fair between the parties, but it cannot be sustained on any such idea. There was no cause of action. It was the failure of the plaintiff's testator to insist upon his rights, or the refusal of the persons appointed to regard them, that has apparently made the expenses incurred useless.

And yet they are not wholly useless. The parties having in part agreed upon three persons to make the estimate, their omission to file their report was an essential condition and prerequisite to the jurisdiction of the court to award a venire, for which the testator might have applied.

Whether this somewhat crude and imperfect statute would have warranted him in claiming these expenses, as properly constituting a part of the costs and expenses which the statute authorized the court to award on the coming in of the report, or assessment by the jury, is not very clear, but I think no action would lie therefor. The judgment should therefore be reversed.

Hunt, Ch. J., Grover, James, and Murray, JJ., concurred with Daniels, J., for affirmance.

Mason and Lott, JJ., with Woodruff, J., for reversal.

Judgment affirmed.