## MEDOMAK NATIONAL BANK

*vs.*

## FANNIE L. WYMAN, Admx.

Lincoln.    Opinion December 19, 1905.

*Bills and Notes.    Statute of Limitations.    Payment of Interest by New Note.
New Promise.    Barred Note Revived as to One Maker.*

When one of the makers of a joint and several negotiable promissory note, after the same has become barred by the statute of limitations, gives his negotiable promissory note to the payee of the barred note in payment of interest on the barred note, it constitutes a new promise on his part to pay the barred note, and revives the barred note as to himself.

On report.    Judgment for plaintiff.

Assumpsit on certain negotiable promissory notes given by the defendant's intestate, L. L. Kennedy, to the plaintiff bank. Tried at the April term, 1905, of the Supreme Judicial Court, Lincoln County. Plea, the general issue and general statute of limitations. At the conclusion of the evidence, it was agreed to report the same to the Law Court, "and that upon so much of the evidence as is legally admissible said court to render such judgment as the rights of the parties require."

The case is amply stated in the opinion.

*Heath & Andrews and W. H. Miller*, for plaintiff.

*Arthur S. Littlefield*, for defendant.

SITTING: EMERY, WHITEHOUSE, STROUT, POWERS, PEABODY, SPEAR, JJ.

SPEAR, J.   This is an action of assumpsit upon seven promissory notes, only four of which are in controversy, and comes up on report. The four notes in question were all substantially in the same form as follows:   For value received, we jointly and severally promise to pay the Medomak National Bank of Waldoboro or order $500 on demand and interest.   They were all signed by the Medomak Ice Company and endorsed upon the back before delivery by L. L. Kennedy the defendant's intestate.   These notes were all intended for the benefit of the Ice Company and in no respect for the benefit of the endorser. In the report "It is admitted that all the endorsements upon the last described four notes except the last endorsement on each were made from funds delivered to the plaintiff by the Medomak Ice Company.

"The plaintiff admits that the said four notes are barred by the statute of limitations as against Lincoln L. Kennedy defendant's intestate, unless the bar in the statute was removed by the note for $152.61 above offered under the sixth count."

This note was as follows:   $152.61 Waldoboro, Maine, May 8th, 1902.   For value received, we jointly and severally promise to pay the Medomak National Bank of Waldoboro or order One Hundred fifty-two 61-100 dollars on demand and interest, and was signed by the Medomak Ice Company and endorsed by L. L. Kennedy, precisely as the four notes in controversy were signed and endorsed.   It will also be observed by comparison that it was in the same form as the other four notes.   "It is further admitted that said note for $152.61 is made up of the aggregate of the last endorsements appearing upon the aforesaid four notes, and that said note for $152.61 was entered upon the books of the bank as 'Note, Medomak Ice Company' and that entry was balanced by a credit of the same amount to profit and loss."   The last endorsements appearing upon these notes show that the note for $152.61 was given to pay the interest upon them to June 5, March 16, March 25 and March 28, 1902, respectively.

The only question presented by this case is whether the payment

of interest upon the four notes by giving the note of $152.61 removed these four notes from the operation of the statute of limitations with respect to the endorser L. L. Kennedy; whether the payment was such an acknowledgment by him of the debt created by these four notes as to warrant the inference of a new promise on his part to pay them. This is not a question as to whether these notes were revived as to the Ice Company but whether they were revived as to the endorser. While the name of L. L. Kennedy appears upon the note in the usual place of an endorser, his legal relation to it under our decisions was that of an original promisor. It will therefore appear that the defendant's intestate stood in the capacity of original promisor upon each of the four notes, and also upon the note which was given for the payment of interest.

After the four notes became outlawed, Mr. Kennedy was relieved by the operation of the statute from payment. At this juncture he was free from any liability and it was absolutely within his privilege to decline to make himself further liable for the payment of these notes. But he did not do this. On the other hand, he became a joint and several promisor with the Ice Company upon the note and gave it to the bank in payment of interest as above stated. As a matter of law he gave his own individual obligation for the payment of the interest, the note given being joint and several. Here it may be remarked that the peculiar wording of this note makes the apparent endorser an original promisor in fact as well as law. The only name upon the face of the note is that of the Medomak Ice Company. It could not be joint and several as to the Company, a single signer. It must therefore have reference to the endorser as one of the joint and several promisors. This is also true with respect to the relation of Mr. Kennedy to the four notes upon which the interest was paid. They were, in fact as well as law, his individual notes. There can be no presumption, under the wording of these notes, either in fact or law, of any other relation of L. L. Kennedy to all of them than that of an original promisor, individually liable.

It would therefore affirmatively appear from the form of these notes that Mr. Kennedy by the note given was not only making a payment of interest upon the notes of the Medomak Ice Company but

upon his own notes as well.   He gave no notice to the bank that he did not intend to revive his liability upon the barred notes and no evidence in the case tends to show that his relation to the notes was other than that shown by the notes themselves.

It therefore seems clear that the natural inference from the facts disclosed by this transaction is, that Mr. Kennedy intended this note at the time it was given as a payment of interest upon these four notes as much as if he had made the payment with his own money or his own check in lieu of the note.   We think that instead of requiring evidence to show that the payment of interest by the note was intended to acknowledge and revive the debt, it would rather require some evidence to overcome the inference that it was not.

In view of the above construction of the relation of the defendant's intestate to the notes in controversy, it becomes unnecessary to consider her contention that the note given for the payment of interest was the note of the Medomak Ice Company only, the payment of which was guaranteed by the endorser as surety provided the company failed to pay.

The principles of law applicable to the removal of the bar of the statute of limitations are well settled.   Payments on a note already barred remove their bar.   *Sinnett* v. *Sinnett*, 82 Maine, 278; *Manson, Ex'r,* v. *Lancey,* 84 Maine, 380; *Pond* v. *French,* 97 Maine, 405.

Payments of interest take the case out of the statute with like effect as payments of principal.   *Fryeburg Parsonage Fund* v. *Osgood,* 21 Maine, 176.

A partial payment by note is as effectual to take the original debt out of the operation of the statute as payment in any other manner. *Ilsley* v. *Jewett,* 2 Met. 168; *Sigourney* v. *Wetherell,* 6 Met. 553; *Wenman* v. *Ins. Co.,* 13 Wend. 261; *Bowman* v. *Downer,* 28 Vt. 532.

In *Sigourney* v. *Wetherell,* 6 Met. supra, it was held that a note given by a guarantor, in payment of the interest due upon the guaranteed note, takes the debt out of the operation of the statute of limitations.

The above decisions follow and rest upon the well settled rule in

Maine that the giving and acceptance of a negotiable note is presumably payment. *Varner* v. *Nobleborough*, 2 Maine, 121. *Bunker* v. *Barron*, 79 Maine, 62. But in the case at bar it is unnecessary to rely upon the presumption of payment as it is admitted that the note was given for the express purpose of paying and did pay the last endorsements on the four original notes. Our conclusion is that the note given in payment of interest upon the four notes, removed the bar of the statute upon these notes as to the defendant's intestate, and that she is liable in this action for their payment.

The plaintiff is entitled to judgment upon the first count in its writ for $3300 and interest at six per cent from Oct. 1, 1902; under the second count for $500 and interest at six per cent from June 5th, 1902; under the third count for $336.95 and interest at six per cent from March 16, 1902; under the fourth count for $135.00 and interest at six per cent from March 25, 1902, under the fifth count for $300 and interest at six per cent from March 28, 1902; under the sixth count for $152.61 and interest at six per cent from May 8, 1902; and under the seventh count for $250.00 and interest at six per cent from April 1, 1904.

*Judgment for plaintiff as above.*